RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 1/29/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DAVID LYNN STAPLETON | DOCKET NO. 12-CV-1859; SEC. P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CORRECTIONS CORPORATION OF AMERICA, ET AL. | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Pro se Plaintiff David Lynn Stapleton filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He claims that the defendants: Tim Keith, Nicole Walker, Pat Thomas, Dr. Kuplesky, Kathy Richardson, and Corrections Corporation of America, were deliberately indifferent to his serious medical needs.

### *Factual Allegations*

Plaintiff alleges that, upon arrival at WNC on October 10, 2010, he had athlete's foot. He was examined by Dr. Cleveland and was provided with one tube of "medical cream," as well as eye drops for an unspecified condition. When he ran out of the cream, he requested more at pill call, but he was told that he would have to make a sick call in order to get a refill. In the meantime, he was provided cream from a first aid kit.

Plaintiff next alleges that, in August 2011, his scalp was raw, itching, and oozing puss.[1] He states that he was forced to

---

[1] He makes no complaints regarding the time frame from October 2010 until August 2011.

make a sick call, where he was charged for Selsan Blue shampoo and a stronger medical cream than what he was given the year before. On October 1, 2011, Plaintiff was moved to Birch Unit. He was provided a pass to see a nurse that night. He claims that although no sick call was made, he was charged for one. [Doc. #1, p.5] Plaintiff was later called out to see the doctor, Dr. Kuplesky, who prescribed a tube of medical cream and sinus medication. [Doc. #1, p.5] On a subsequent medical callout, Plaintiff was provided more cream as well as sinus pills and nasal spray. He complained that he should not have to pay for any follow-up visits or "medical cream".

On January 12, 2012, Plaintiff developed a rash. He made an emergency sick call and was given two kinds of medical cream. After seeing the doctor, he was prescribed antibiotics for fourteen days and miconazole cream for three months for a yeast infection. When the prescription ran out, Plaintiff's rash returned.

Plaintiff was examined by Nurse Practitioner Richardson, who prescribed two weeks of antibiotics and "even stronger medical cream." [Doc. #1, p.6] After this round of medication ended, Plaintiff asked for a follow-up appointment and was told to make a sick call.

Plaintiff complains that all of the defendants have, at one time or another, ignored his complaints and interfered with his treatment by applying "the new $3.00 pre pay scam they just started

using." He complains that when he runs out of medication, he is told to make a sick call so they can charge him again. As of June 5, 2012, Plaintiff was scheduled for a dermatology appointment at LSU hospital. Doc. #1-1, p.6]

Plaintiff has refused to pay for medication at times. [Doc. #1-1, p.7] On June 14, 2012, Plaintiff received a letter from the nurse stating that, because Plaintiff's dermatology appointment at LSU has been delayed due to a hospital backlog, Plaintiff could have his cream refilled at no charge until his dermatology appointment. The nurse also offered to refill the "t-gel shampoo". Plaintiff does not believe a dermatologist is necessary based on his own research. [Doc. #1-1, p.7]

### Law and Analysis

Plaintiff complains that he has been denied adequate medical care because his recurring / chronic fungal infections have not been cured. Medical care claims asserted by convicted prisoners, like Plaintiff, are analyzed under the Eighth Amendment. In order to prevail on such claims, convicts must establish that the denial of medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment," and this includes

"indifference ... manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-105 (footnotes and internal quotation marks omitted)); see also Helling v. McKinney, 509 U.S. 25, 35-37 (1993). However, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Plaintiff outlines instance after instance where he requested and received medical care and medications. He received a variety of medical creams, antibiotics, and shampoos to treat his condition(s). He specifically states that there were times when he received no medication because he refused to pay for it. [Doc. #1-1, p.7] Plaintiff complains that, because his condition is chronic or recurring, he should not have to pay for medical care or treatment.

Numerous courts have found that co-pay policies are constitutionally permissible if they do not interfere with timely

and effective treatment of serious medical needs.[2] Nothing in the constitution guarantees inmates the right to be entirely free from costs. This Court has stated:

> "The state has a legitimate interest in the efficient use of prison resources. The co-pay Policy accomplishes this goal by applying negative reinforcement to the human tendency to overuse health care services paid for by a third party. This is the very same, common sense reason that many health care systems in this country have implemented co-pay policies. Co-pay policies are designed to encourage universal, but efficient, access to medical care." Hutchinson v. Belt, 957 F.Supp. 97, 100 (W.D.La. 1996).

Most importantly, Plaintiff does not allege that he was ever denied medical care because of an *inability* to pay. See Watson v. Quarterman, 2008 WL 552447, 13 (S.D.Tex. 2008)("Because inmates are not refused medical care if they cannot afford to pay the $3.00 surcharge, imposition of the co-payment does not result in an unconstitutional denial of care.") If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs. Instead, such a requirement

---

[2] See Boyd v. Lasher, 2010 WL 497765 (E.D.La. 2010); Watson v. Quarterman, 2008 WL 552447 at *12-13 (S.D.Tex. Feb. 27, 2008); Wilkerson v. Champagne, 2003 WL 22872106 at *3 (E.D.La. Nov. 28, 2003); Reynolds v. Wagner, 128 F.3d 166, 174 (3rd Cir.1997) (co-pay policy); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404 (9th Cir.1985) (co-pay policy); Cameron v. Sarraf, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay policy); Johnson v. Dept. of Public Safety and Correctional Services, 885 F.Supp. 817 (D.Md.1995) (co-pay policy); Lewis v. Brazzel, Civil No. 07-1227, 2007 WL 4624017, *5 (W.D.La. Oct.29, 2007); Coleman v. Whitney, 2006 WL 3791316, 2 (E.D.La. 2006)("Programs that require inmates to bear part of their own medical costs remain within constitutional bounds so long as the program does not condition the providing of necessary medical services on an inmate's ability to pay.")

simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world. See Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997)(citation and quotations omitted).

Plaintiff complains that his skin issues have never been cured. However, unsuccessful medical treatments, negligence, and medical malpractice are insufficient to give rise to a successful claim of deliberate indifference to serious medical needs. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner's disagreement with medical treatment does not raise a viable deliberate indifference claim, absent exceptional circumstances. Id.; Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). In order to prevail, a plaintiff must establish that the defendant " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " Gobert, 463 F.3d at 346 (citing Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff's disagreement with his medical treatment and the fact that the treatment did not result in a cure does not establish a constitutional violation. See Gobert, 463 F.3d at 346; Domino, 239 F.3d at 756. Also, although Plaintiff concludes that the all defendants, at one time or another, ignored him, the factual chronology and treatment history shows otherwise. Although his

skin condition is undoubtedly frustrating, Plaintiff has never been denied medical care for his condition. Moreover, Plaintiff is scheduled to see a dermatologist at LSU hospital in an effort to obtain a "cure" to his problem. While Plaintiff disagrees with the efficacy of the treatment provided at Winn, that is insufficient to state a claim for deliberate indifference. See <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997).

### *Conclusion*

The Court is convinced that Plaintiff has presented the best case that could be presented by him under these circumstances through a complaint and amended complaint, and that further amendment of the pleadings would serve no useful purpose. Accepting all of Plaintiff's allegations as true,

**IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B) and 1915A.

### *Objections*

**Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the**

magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 29th day of January, 2013.

```
                            JAMES D. KIRK
                            UNITED STATES MAGISTRATE JUDGE
```